Civil Action No. 19 CV 07024 (LAP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOANNE JAFFE,

Plaintiff,

- against -

CITY OF NEW YORK, POLICE COMMISSIONER
JAMES O'NEILL, and FIRST DEPUTY
COMMISSIONER BENJAMIN TUCKER,

Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO BAR THE CITY FROM INTERFERING WITH PLAINTIFF'S ACCESS TO WITNESSES AND EVIDENCE AND FROM REPRESENTING NON-PARTIES WHO ARE NOT CITY EMPLOYEES**

***GEORGIA M. PESTANA***
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Rm. 2-124
New York, N.Y.  10007

Of Counsel: Donna A. Canfield
Clava Brodsky

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT ................................................................................................................... 3

  POINT I............................................................................................................................ 3

    THE OFFICE OF THE CORPORATION COUNSEL MAY REPRESENT NON-
    PARTY AND NON-EMPLOYEE WITNESSES ....................................................... 3

  POINT II .......................................................................................................................... 16
    PLAINTIFF'S CLAIMS THAT THE LAW DEPARTMENT'S RELATIONSHIP
    WITH NON-PARTY WITNESSES IS INAPPROPRIATE OR UNETHICAL ARE
    MERITLESS ................................................................................................................. 16

  POINT III ........................................................................................................................ 19
    PLAINTIFF'S CLAIMS THAT DEFENDANTS HAVE NOT COMPLIED WITH
    THEIR DISCOVERY OBLIGATIONS IS UNSUPPORTED BY THE RECORD .. 19

CONCLUSION................................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Astwood v. Cohen*,
291 N.Y. 484 (1944) ................................................................ 14

*Bank of N.Y. Co v. Northeast Bankcorp*,
9 F.3d 1065 (2d Cir. 1993)........................................................ 7

*Brawer v. Horowitz*,
535 F.2d 830 (3d Cir. 1976)....................................................... 5

*Cahn v. Town of Huntington*,
29 N.Y.2d 451 (1972) ............................................................... 4

Case of Captain Wilkes,
9 Op. Att'y Gen. 51(1857)......................................................... 10

*Cirale v. 80 Pine Street Corp.*,
35 N.Y.2d 113 (1974) ............................................................... 8

*City of N.Y. v. Mickalis Pawn Shop*,
645 F.3d 114 (2d Cir. 2011)....................................................... 6

*Coleman v. City of New York*,
1999 U.S. Dist. LEXIS 10405, at *5 (S.D.N.Y. July 8, 1999) ...... 6

*Comm. of the Interns & Residents v. Dinkins*,
86 N.Y.2d 478 (1995) ............................................................... 15

*Comptroller of the City of N.Y. v. City of N.Y.*,
2021 N.Y. App. Div. LEXIS 4794, at *7 (1st Dep't Aug. 12, 2021) .......... 9

*Export-Import Bank of the United States v. Asia Pulp & Paper Co.*,
232 F.R.D. 103 (S.D.N.Y. 2005)) ............................................. 9

*Gary Friedrich Enters. v. Marvels Enters.*,
2011 U.S. Dist. LEXIS 54154, at *17 (S.D.N.Y. May 20, 2011)........... 9,19

*Hall v. Clinton*,
285 F.3d 74 (D.C. Cir. 2002)..................................................... 5, 11

*In re Grand Jury Proceedings*,
5 F. Supp. 2d 21 (D.D.C. 1998) ................................................ 13

*Judd v. Take-Two Interactive Software, Inc.*,

2008 U.S. Dist. LEXIS 26920, at *2-3 (S.D.N.Y. Apr. 3, 2008) ................................................. 18

*Kay v. Board of Higher Education*,
260 A.D. 9 (1st Dep't 1940) ...................................................................................................... 4

*Lamberti v. MTA*,
170 A.D.2d 224 (1st Dep't 1991) ............................................................................................ 4

*Martin A. v. Gross*,
194 A.D.2d 195 (1st Dep't 1993) ............................................................................................ 8

*Matter of P.B.A. of the City of N.Y. v. N.Y. State P.E.R.B.*,
6 N.Y.3d 563 (2006) ................................................................................................................ 3

*Matter of Tormey v. La Guardia*,
172 Misc. 1091, 1093-1096 (Sup. Ct., N.Y. Co.), *aff'd*, 259 A.D. 802 (1st Dep't), *aff'd*, 284 N.Y.
      607 (1940) ........................................................................................................................... 14

*McKean v. City of New York,*
*2005 U.S. Dist. LEXIS 23903, at *5 (S.D.N.Y. Oct. 14, 2005)* .................................................. 6,7

*One Beekman Place v. City of N.Y.*,
169 A.D.2d 492 (1st Dep't 1991) ............................................................................................ 8

*Peralta v. Cendant Corp.*, 190 F.R.D. 38, (D. Conn. 1999) ................................................... 9-10, 16

*Radovic v. City of New York*,
168 Misc. 2d 58 (Sup. Ct., N.Y. Cty., 1996) ........................................................................ 7,8

*Ramson v. Mayor*,
24 Barb. 226 (Sup. Ct., Special Term 1857) ......................................................................... 5

*Smith v. New York*,
611 F. Supp. 1080 (S.D.N.Y. 1985) ....................................................................................... 5

*Surles v. Air France*, 2001 U.S. Dist. LEXIS 10048, at *17-18 (S.D.N.Y. July 17, 2001) ...... 9, 16

**Statutes - Federal**
28 U.S.C. § 517 ........................................................................................................................ 4, 5
FRCP 26(b) ............................................................................................................................. 21

**Statutes – State and City**
Bill Jacket for L. 1979, ch. 673, Memorandum ..................................................................... 15
Laws of 1897, ch. 378, sec. 255 ............................................................................................. 3
Municipal Home Rule L. § 2(1) ............................................................................................. 14
New York City Administrative Code §7-109 ................................................................. 10, 13-14
New York City Charter § 394(a) .................................................................................. passim

New York City Charter § 2604(d)(5)............................................................................... 17

New York Exec. L. § 63(1)............................................................................................... 4

New York City Gen. Municipal Law § 50-k ............................................... 10, 13 ,15

N.Y.R. Prof. Conduct 4.2(a) (22 NYCRR 1200.0).................................................... 17

## PRELIMINARY STATEMENT

Defendants, the City of New York, former NYPD Commissioner James O'Neill, and former First Deputy Commissioner Benjamin Tucker respectfully submit this memorandum of law in opposition to Plaintiff's motion to bar the City of New York from interfering with Plaintiff's access to witnesses and evidence, and representing non-parties who are not City employees.  In support of her motion, Plaintiff makes a number of specious claims, none of which are supported by the evidence.

Plaintiff's claims about insufficient or untimely discovery are without merit. Plaintiff begins by recycling an earlier dispute concerning the handwritten notes of Chief Raymond Spinella.  This issue, however, was raised and resolved months ago by the Court and Defendants have met their discovery obligations as it pertains to this witness.  Plaintiff's claim that the production contained "redactions, overwriting or new dating" is simply unsupported by the deposition testimony of Chief Spinella—testimony noticeably absent from this motion, since it clearly contradicts Plaintiff's narrative.  Further, Plaintiff's claim that the City's production of Chief Spinella's notebooks made it impossible to determine which of the notebooks the pages came from, and that the City randomly Bates stamped the production is disingenuous:  the production plainly identified the source of the notebook entries, the notebooks were produced in their entirety and as they were maintained, and Plaintiff deposed Chief Spinella on two occasions while he referred to the original notebooks.

Plaintiff's primary grievance, however, is that the City's representation of non-party witnesses and various assertions of privilege amount to unlawful "interference" by the City.  But Plaintiff's cries of foul are not supported by the record or the law.  As set forth more fully below, the New York City Charter confers broad authority on the Corporation Counsel to provide counsel in matters "in which the City is interested."  This authority allows the representation of non-party

witnesses, such as Mr. Eichenstein and First Lady Chirlane McCray, where such representation furthers the City's interest in defending the City's decisionmaking, safeguarding its privileges, and shielding its former employees from the prospect of attorney's fees for properly doing their jobs. The Law Department's limited representation of Mr. Eichenstein falls squarely within its Charter authority and is consistent with its ethical responsibilities.  Yet, Plaintiff does not even mention this broad Charter authority in her brief.

The Corporation Counsel is also authorized to register privilege objections to questions posed to former employees, as in the case of the deposition of former employee Jon Paul Lupo, where it is related to communications with the City's attorneys concerning the former employee's conduct, knowledge, and communications during the former employee's employment. It is well-established that these communications are protected by the City's privilege.

In short, the Corporation Counsel has not improperly interfered with discovery, but has instead acted within its statutory authority and consistent with its ethical and legal obligations as counsel for the City.  Thus, for the reasons set forth below, Plaintiff's motion should be denied.

## STATEMENT OF FACTS

For a statement of material facts, which includes a procedural history of this case, Defendants respectfully refer the Court to the Declaration of Donna A. Canfield, (hereinafter "Canfield Decl.") dated September 13, 2021, and the exhibits annexed thereto.

**ARGUMENT**

**POINT I**

**THE OFFICE OF THE CORPORATION COUNSEL MAY REPRESENT NON-PARTY AND NON-EMPLOYEE WITNESSES**

I.     **The Corporation Counsel may represent non-party and non-employee witnesses**

The Corporation Counsel's authority to represent Simcha Eichenstein and other non-party witnesses, including Chirlane McCray, is rooted in its Charter authority to provide counsel in matters "in which the City is interested."  New York City Charter § 394(a).  Plaintiff's argument to the contrary ignores the broad authority granted to the Law Department in Chapter 17 of the Charter.

A.     **The Corporation Counsel has the discretion to provide representation in matters that further the City's interest**

The Corporation Counsel's authority to represent non-party witnesses, including former employees, is grounded in Chapter 17 of the New York City Charter, which establishes the Law Department and authorizes the Corporation Counsel to "have charge and conduct of all the law business of the city and its agencies and in which the city is interested."  Charter § 394(a).[1] The State Legislature, which enacted the relevant provision of the Charter, endowed the Law Department with broad powers to defend the City's interests and ensure that the City speaks with one voice in litigation.  *See Matter of P.B.A. of the City of N.Y. v. N.Y. State P.E.R.B.*, 6 N.Y.3d 563, 573-574 (2006) (Charter provision setting forth power of the Police Commissioner was originally enacted as state statute and thus reflected "the policy of the State…"); *Cahn v. Town of*

---

[1] This broad language has remained largely unchanged since the enactment of the 1897 Greater New York Charter.  *See* Laws of 1897, ch. 378, sec. 255 ("The corporation counsel shall have charge and conduct of all the law business of the corporation and its departments and boards, and of all law business in which The City of New York is interested.").  Its core text in fact can be found in the City's Charter of 1849 (Laws of 1849, ch. 187).

*Huntington*, 29 N.Y.2d 451, 454-55 (1972) (noting that agencies and officers generally lack the authority to employ private counsel, subject to certain limited exceptions).  The Law Department's authority to represent the City and determine its position in litigation is firmly established.  *See Kay v. Board of Higher Education*, 260 A.D. 9, 12 (1st Dep't 1940) (Corporation Counsel is the "sole judge as to the conduct of litigation and other law matters"); *Lamberti v. MTA*, 170 A.D.2d 224 (1st Dep't 1991) (borough president and individual City Council member lacked authority to retain counsel and bring action against MTA, on the grounds that the Corporation Counsel has exclusive authority to conduct all law business of the City).

   The Charter's authorization to participate in matters "in which the city is interested" mirrors other statutes at the Federal and State levels that reserve representational authority to a particular law department.  For example, 28 U.S.C. § 517 provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other *interest of the United States*."  *See also* Exec. L. § 63(1) (granting the State Attorney General similar authority to "prosecute and defend all actions and proceedings *in which the state is interested*…").

   At both the federal and City levels, the chief legal officer is endowed with broad authority to participate in litigation to safeguard national or city interests.  The Law Department's enabling statute, like that of the Solicitor General, is not limited to any particular class of cases.  *Compare* Charter § 394(a) (authorizing Law Department to oversee "*all* the law business … in which the city is interested") *with* 28 U.S.C. § 517 (empowering Solicitor to "attend to *any* … interest of the United States") (emphases added).  Indeed, from the time that the core text of the powers of the Corporation Counsel was enacted in the 19th Century, its breadth of coverage has been well understood even to cover matters in which no City agency or employee is a party:  In

*Ramson v. Mayor*, 24 Barb. 226 (Sup. Ct., Special Term 1857), the Court noted that the reason for the Charter's provisions "are familiar to all who have had any practical knowledge of the affairs of the city government." *Id.* at 227. Although "[m]any suits, proceedings, and causes, are constantly instituted, in which neither the corporation nor any of its departments are parties," the Court recognized that "the questions to be decided may be such as to affect the property or rights of the corporation or its officers." *Id.* Accordingly, "[t]he intent of the charter of 1849 was to place all legal business, in the control and under the management of the corporation counsel, in the result of which the corporation might have any interest, and for the expense of which it might, by any possibility, be called on for payment." *Id.* The only explicit limitation in the Charter is that the City's interests be at stake. *See Smith v. New York*, 611 F. Supp. 1080, 1087 (S.D.N.Y. 1985) ("[T]he Corporation Counsel should not further or protect, at public expense, the entirely private legal interests of city employees.").

Courts construing the analogous language at the Federal level have given it a broad construction, interpreting it to authorize representation of non-employees where the Department of Justice determined it was in the best interests of the United States to provide such representation. In *Hall v. Clinton*, 285 F.3d 74 (D.C. Cir. 2002), for example, the D.C. Circuit upheld the Department of Justice's decision to represent the former First Lady based on conduct she allegedly took at the White House, citing the "flexible mandate" of 28 U.S.C. § 517 to attend to the "interest of the United States." *Id.* at 80. Similarly, in *Brawer v. Horowitz*, 535 F.2d 830, 834 (3d Cir. 1976), the Third Circuit rejected a challenge to DOJ's authority to represent a cooperating witness in a damages suit, noting that it "approaches the frivolous" to maintain that "the Department of Justice possesses no statutory or regulatory authority to represent a nongovernment defendant in a civil case." *Id.* at 834. Notably, in both *Hall* and *Brawer*, the United States represented non-employees in litigation, much as the City seeks to do here.

A similarly broad construction of the analogous language in section 394(a) of the Charter is warranted here.  As with the DOJ's representational authority, the Corporation Counsel's authority under the Charter to provide representation turns on the *interests* to be vindicated, rather than on the *identity* of the party.

### B.   The Corporation Counsel May Represent Non-Party Witnesses Simcha Eichenstein and Chirlane McCray

Here, the Corporation Counsel has reasonably concluded that representation of Assemblymember Simcha Eichenstein and Chirlane McCray furthers the City's interest in defending the City's decisionmaking, safeguarding its privileges, and shielding its former employees from the prospect of attorney's fees for properly doing their jobs.

As an initial matter, although Plaintiff specifically challenges the Law Department's representation of Mr. Eichenstein, her request is much broader: she asks the Court to bar the Corporation Counsel "from representing *a non-party* or non-employee witness *in any litigation*." Plaintiff's Mem. at 17; Proposed Order at 4.  This requested relief extends far beyond the contours of this case.  *Cf. City of N.Y. v. Mickalis Pawn Shop*, 645 F.3d 114, 145 (2d Cir. 2011) (noting that an injunction is overbroad when it governs "conduct that was not fairly the subject of litigation").

Furthermore, Plaintiff's suggestion that the Law Department is precluded from representing any non-party witness, including current employees, ignores well-settled case law to the contrary.  In *McKean v. City of New York*, for example, the same Law Department attorney represented both the City and the non-party witness, and the Court held that it saw "no basis for intervening in the decision of the Law Department" to represent the witness.  2005 U.S. Dist. LEXIS 23903, at *5 (S.D.N.Y. Oct. 14, 2005); *see also Coleman v. City of New York*, 1999 U.S. Dist. LEXIS 10405, at *5 (S.D.N.Y. July 8, 1999) (noting that the "corporation counsel's discussion with non-adverse city employees about their depositions was protected by defendant city's attorney-client privilege…"); *Radovic v. City of New York*, 168 Misc. 2d 58, 60-61 (Sup. Ct.,

N.Y. Cty., 1996) (Law Department represented a former employee who appeared at trial as a non-party witness).  The Court should thus reject Plaintiff's suggestion that the City is barred from representing any non-party witness.

>    1.   *The Law Department May Represent Simcha Eichenstein*

The Law Department's representation of Assemblymember Simcha Eichenstein, who was previously employed by the City and requested representation from the Law Department in this matter, ensures the protection of the City's privileges and furthers the City's interests in protecting its current and former employees.

At the threshold, Plaintiff's request that the Court bar the City from representing Mr. Eichenstein is moot.  The agreement between Mr. Eichenstein and the Law Department is limited to "representation for the limited purpose of [the] deposition…"  Pl. Ex. 7.  But this deposition has already occurred, and no additional deposition of Mr. Eichenstein has been noticed.  A court order barring such representation would thus have no effect, and would instead amount to an advisory opinion.  *See Bank of N.Y. Co v. Northeast Bankcorp*, 9 F.3d 1065 (2d Cir. 1993) (finding case moot where challenged merger already happened).

Even if the dispute were justiciable, the Law Department was well within its statutory authority to represent Mr. Eichenstein at his deposition.  The Law Department could represent Mr. Eichenstein were he presently employed by the City.  *See, e.g.*, *McKean*, 2005 U.S. Dist. LEXIS 23903, at *5 (allowing the same Assistant Corporation Counsel to represent the defendants and the witness, all City employees).  Mr. Eichenstein's departure from City government does not alter the Law Department's discretion to represent him for the purposes of a deposition in this matter.

First, the Law Department has an interest in defending the legality of the City's decisionmaking, of which Mr. Eichenstein was a part when he was employed by the City.  The

deposition of Mr. Eichenstein focused on the drafting and dissemination of certain email correspondences that Mr. Eichenstein sent while a City employee.  Plaintiff's contention is that Mr. Eichenstein was involved in the decisionmaking surrounding the employment decisions at issue, and, in particular, coordinating the Mayor's Office's dissemination of public information about new members in senior leadership at the Police Department.  Plaintiff's Mem. at 5.  The City, as a defendant, plainly has an interest in vindicating the lawfulness of that decisionmaking and, therefore, has the discretion to represent witnesses that allegedly were broadly involved in such decisionmaking.  *See Radovic*, 168 Misc. 2d at 60 (explaining that the City like a corporation "is a legal creation which acts through its employees").

Second, questions about Mr. Eichenstein's official actions may implicate privileges that protect the public interest and belong to the City, including the public interest privilege and attorney-client privilege.  *Cirale v. 80 Pine Street Corp.*, 35 N.Y.2d 113, 117 (1974) (explaining that the public-interest privilege "attaches to confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged") (internal quotation marks omitted).  Many of Plaintiff's questions during the first deposition of Mr. Eichenstein focused on the development of City Hall policy and the creation of certain official documents.  *See* Deposition of Simcha Eichenstein, annexed as Exhibit "6" to the Declaration of John W. Moscow ("Moscow Decl.") at 67:8-10.  Any future questioning along those lines could solicit confidential information.  *Martin A. v. Gross*, 194 A.D.2d 195, 203 (1st Dep't 1993) ("In determining whether the public interest privilege is applicable in a given set of circumstances, a court must weigh the encouragement of candor in the development of policy against the degree to which the public interest may be served by disclosing information which elucidates the governmental action taken") (quoting *One Beekman Place v. City of N.Y.*, 169 A.D.2d 492 (1st Dep't 1991)); *Comptroller of the*

*City of N.Y. v. City of N.Y.*, 2021 N.Y. App. Div. LEXIS 4794, at *7 (1st Dep't Aug. 12, 2021) (finding that public interest privilege shielded certain "predecisional and deliberative communications"). Without Law Department representation, Mr. Eichenstein might unwittingly divulge privileged or confidential information he obtained while employed by the City. Thus, Mr. Eichenstein's personal interest in obtaining counsel coincides with the City's interest in protecting privileged and confidential information.

Third, and relatedly, the Corporation Counsel may establish an attorney-client relationship with Mr. Eichenstein because the deposition concerns actions Mr. Eichenstein took in his official City capacity when he was an employee. Attorney-client privilege shields conversations with former employees about conduct and knowledge they acquired during the course of their employment, even if the attorney for the corporation does not formally represent the former employee. *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 41-42 (D. Conn. 1999) ("The distinction drawn by the Court between attorney-client privileged and non-privileged communications with former employees should not be difficult to apply if the essential point is kept in mind: did the communication relate to the former employee's conduct and knowledge, or communication with defendant's counsel, during his or her employment? If so, such communication is protected from disclosure by defendant's attorney-client privilege under *Upjohn*."); *see also Gary Friedrich Enters. v. Marvels Enters.*, 2011 U.S. Dist. LEXIS 54154, at *17 (S.D.N.Y. May 20, 2011) ("Virtually all courts hold that communications between company counsel and former company employees are privileged if they concern information obtained during the course of employment." (quoting *Export-Import Bank of the United States v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 112 (S.D.N.Y. 2005)); *Surles v. Air France*, 2001 U.S. Dist. LEXIS 10048, at *17-18 (S.D.N.Y. July 17, 2001) (same).

Here, the bulk of the questions directed at Mr. Eichenstein related to the development of City policies regarding diversity in the upper ranks of the Police Department. Questions about Mr. Eichenstein's discussions with defense counsel are privileged to the extent they discussed Mr. Eichenstein's conduct and knowledge gained during his public employment. *See Peralta*, 190 F.R.D. at 42; Depo. of Simcha Eichenstein at 34:13.  Because the Law Department has a clear interest in protecting the City's privilege, it cannot be precluded from representing a former employee where such representation will best protect the City's privilege.

Finally, as an employer, the City has an interest in protecting its officers and employees: indemnification and representation are a benefit of public service.  *See generally* Gen. Municipal Law § 50-k; Ad. Code § 7-109; *see also* Case of Captain Wilkes, 9 Op. Att'y Gen. 51, 52 (1857) ("No man of common prudence would enter the public service if he knew that the performance of his duty would render him liable to be plagued to death with lawsuits, which he must carry on at his own expense.").  It would be an anomaly to hold that such protections evaporate once employees leave public service, even if they are deposed about their official actions taken during their public employment.  The City thus has a strong interest in avoiding any chilling effects that the prospect of attorney's fees would have on former City employees who were properly doing their jobs. Such employees would be understandably concerned about the possibility of being unrepresented while being interrogated under oath about their official acts by an attorney.  Here, Mr. Eichenstein is deposed solely because he used to be a City employee; in such circumstances, the City's interests as an employer trigger the Law Department's representational authority.

In short, both the City's corporate interests in defending its decisionmaking and protecting its privileges, as well as its interests as an employer, trigger the Law Department's authority to represent Mr. Eichenstein.

*2. The Law Department May Represent First Lady Chirlane McCray*

Plaintiff also asks the Court to bar the Law Department from representing "other witnesses," "such as … Chirlaine McCray." Plaintiff's Mem. at 10. Plaintiff makes no specific arguments about the Law Department's representation of Ms. McCray, but if the Court construes Plaintiff's request as seeking an order barring the City's representation of the First Lady, it should conclude that such representation would fall within the broad statutory authority conferred on the Corporation Counsel to protect the interests of the City.

The City's distinct interest in representing Ms. McCray stems from the First Lady's involvement in government decisionmaking. Plaintiff has sought to depose Ms. McCray because of her alleged participation in the City's high-level decisionmaking about the hiring of certain Police Department officials. According to Nilda Hofmann, one of the individuals already deposed in this matter, Ms. McCray was present at her interview for Chief of Community Affairs. *See* Dep. of Nilda Hofmann, annexed to the Moscow Decl. as Exhibit "9" at 32, 42.

As attorney to the defendants in this action, the City has an interest in defending the legality of the defendants' decisionmaking, of which the First Lady was allegedly a part. In her capacity as a trusted advisor, the First Lady attended interviews to assist the Mayor and others as they made employment decisions about who should hold a three-star position, the Police Department's top rank. Indeed, Plaintiff seeks to depose the First Lady *because of* her participation in these meetings, her alleged assistance in coordinating the Administration's high-level employment decisions, and her close proximity to the Mayor. As with Mr. Eichenstein, any deposition of Ms. McCray will focus on her conduct with respect to City government matters.

Public representation of the First Lady is not unprecedented. In *Hall v. Clinton*, 285 F.3d 74 (D.C. Cir. 2002), for example, the D.C. Circuit affirmed the Department of Justice's representation of then-First Lady Hillary Clinton. In that case, a former White House employee

alleged that Clinton retaliated against her by having her position eliminated and reassigning her to a less desirable position.  *Id.* at 77.  In upholding the DOJ's decision to represent the First Lady, the Court relied on DOJ's statutory authority "to attend to the interests of the United States" to conclude that "even if Clinton were a purely private citizen at all times relevant to Hall's suit— and, arguably, she was not—it was well within the DOJ's discretion to determine that the United States has (and continues to have) an interest in representing the former First Lady in litigation based upon actions she allegedly undertook while at the White House."  *Id.* at 79-80.  Similarly, here, the deposition will necessarily touch on the First Lady's activities with respect to City Government matters and in particular on aspects of the Mayor's official duties, including his oversight of the Police Department.  Such questioning suffices to trigger the Law Department's broad authority to represent the interests of the City.  *See* Charter § 394(a).

The Law Department may represent the First Lady for the additional reason that she plays a multifaceted role in relation to City government.  Throughout her time at City Hall, the First Lady has had a pivotal role in the Mayor's mental health initiatives, leading the launch of ThriveNYC, a plan to overhaul the City's mental health services.  She has a staff of full-time City employees, promotes numerous City initiatives, and serves as co-chair on the Task Force for Racial Inclusion and Equity and on the Commission on Gender Equity.  As part of her various duties, she regularly convenes and chairs meetings of City government employees.  *See* Schedule for First Lady Chirlane McCray at https://a002-oom03.nyc.gov/IRM/Handlers/Html/WelcomePage.ashx?eventGuid=9c21e73d-b5bb-4528-ad0a-4d0402ac2984.  She has routinely served as a close advisor to the Mayor and has counseled him on many policy initiatives.  In light of the First Lady's extensive public role, albeit as a volunteer, the Law Department's representation of her at a deposition that will focus on her alleged role in high-level decisionmaking as part of the Mayor's inner-circle is consistent with the City's interests and

thus is authorized under Section 394 of the Charter. *Cf. In re Grand Jury Proceedings*, 5 F. Supp. 2d 21, 27-28 (D.D.C. 1998) (holding that conversations between the First Lady and two senior advisors to the president fell under the executive privilege because "Mrs. Clinton is widely seen as an advisor to the President and Congress itself has recognized that the President's spouse acts as the functional equivalent of an assistant to the President") (internal quotation marks omitted).

### C.    The Administrative Code does not limit the breadth of the Charter's authority

Plaintiff does not even acknowledge Charter § 394(a), which originates in State legislation and endows the Corporation Counsel with the authority to "have charge and conduct of all the law business of the city … in which the city is interested."  She argues instead that representation of non-party witnesses falls outside the scope of the Law Department's authority under section 7-109 of the Administrative Code and section 50-k of the General Municipal Law. Mem. at 12-14.  But the relevant statutory authority is found in the Charter, and neither the Administrative Code nor the General Municipal Law limits the breadth of the Charter's authorization to provide representation where the City is interested – and Plaintiff offers no reason why the broad language of the Charter should be so limited.

In addition to the broad authority set forth in the Charter, section 7-109 of the Administrative Code separately provides that the Corporation Counsel may appear in an action "brought against any officer, subordinate or employee … by reason of any acts done or omitted … while in the performance of his or her duty," subject to certain conditions.  A separate provision in State law – General Municipal Law § 50-k – requires the Corporation Counsel to represent employees sued in civil actions for conduct that "occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency…"  Gen. Municipal L. § 50-k(2).

Plaintiff's novel construction of the Administrative Code as delineating the *only* scenario where the Corporation Counsel may represent an individual inverts the appropriate relationship between the Charter and the Administrative Code and finds no support in case law. Plaintiff's Mem. at 13.   The Charter serves as a kind of local constitution, establishing the fundamental structure and duties of City government, officers and agencies.   *See* Municipal Home Rule L. § 2(1) (providing that a charter "includes the fundamental provisions defining, extending or limiting its corporate powers or affecting the framework of its government").   The Administrative Code, by contrast, contains legal provisions setting forth details of City government.   *See Astwood v. Cohen*, 291 N.Y. 484, 489 (1944) (explaining that the City is "governed by a short form Charter, setting forth the structure of the city government and the manner in which it is to operate … and by an Administrative Code which was enacted by the Legislature as a codification and restatement of existing law 'in harmony with and supplemental to the New York city charter'" (quoting L. 1937, ch. 929)); *Matter of Tormey v. La Guardia*, 172 Misc. 1091, 1093-1096 (Sup. Ct., N.Y. Co.), *aff'd*, 259 A.D. 802 (1st Dep't), *aff'd*, 284 N.Y. 607 (1940) (relying upon Charter supersession provision and purpose of Administrative Code to find that Charter provision controls).   The Charter thus establishes a broad grant of authority, while the Administrative Code provides more specific instructions where necessary.   While provisions of the Administrative Code should be harmonized with the Charter where possible and may even control on occasion (for example, where a provision of the Administrative Code enacted by the State Legislature preempts other law), they cannot be construed to negate the broad powers set forth in the Charter merely by attenuated implication.

Here, section 7-109 of the Administrative Code does not even purport to limit the breadth of the Charter's authorization to provide representation in any matter in which the City is interested.   Section 7-109 expressly authorizes the Corporation Counsel to represent city

employees "whenever the interests of the city" so require, echoing the Charter authority to participate in matter "in which the city is interested."  Charter § 394(a).  The Administrative Code does not limit the Charter's broad grant of authority or purport to set forth an exclusive list of all the circumstances in which the Corporation Counsel may act in the interest of the City, but rather merely provides more detail on the scope of the Corporation Counsel's discretion – and the duty of the relevant agency to cooperate – in the particular instance where an action or proceeding has been brought against an "officer, subordinate or employee."  The Law Department, therefore, does not exceed its statutory power where it determines that representation of a non-party witness furthers the City's interests

Similarly, section 50-k of the General Municipal Law, which requires the City to represent and indemnify certain City employees, has no bearing on whether the Law Department may, in its discretion, represent certain non-party witnesses.  It was enacted to *expand* and consolidate indemnification of City employees.  *See* Gen. Municipal L. § 50-k(9) ("The provisions of this section shall not be construed in any way to impair, alter, limit, modify, or abrogate or restrict … any right to defense and/or indemnification provided for any governmental officer or employee by, in accordance with, or by reason of, any other provision of state, federal or local law or common law."); *cf. Comm. of the Interns & Residents v. Dinkins*, 86 N.Y.2d 478 (1995) (holding that section 50-k did not abrogate contractual agreement to provide greater coverage than provided in the statute); *see also* Bill Jacket for L. 1979, ch. 673, Memorandum ("Currently, under state and city law, New York City policemen, firemen, and teachers are indemnified against civil suits arising out of the course of their employment.  There is no justification for limiting indemnification to these occupations, however.").

Accordingly, Charter § 394(a), and not the Administrative Code or General Municipal Law, governs the Law Department's discretion to represent Mr. Eichenstein and Ms.

McCray in this matter.   The Corporation Counsel has reasonably determined that representing these two non-party witnesses furthers the City's interest in representing those who participated in City decisionmaking and in safeguarding the City's privileges.   The Court should therefore reject Plaintiff's challenge to the Law Department's representation.

## POINT II

**PLAINTIFF'S   CLAIMS   THAT   THE   LAW DEPARTMENT'S   RELATIONSHIP   WITH NON-PARTY   WITNESSES   IS INAPPROPRIATE   OR   UNETHICAL   ARE MERITLESS**

Plaintiff's claims that the City has sought to interfere with her right to obtain evidence and prosecute her claims are without merit.   Plaintiff's Mem. at 15-16.   First, the City's privilege objections during the depositions of non-party witnesses were appropriate.   Second, the City has not unlawfully precluded Plaintiff from speaking with witnesses.   And, finally, the terms of the representation agreement between the Law Department and Mr. Eichenstein are consistent with the Corporation Counsel's ethical obligations.

To begin, the City's privilege objections during the depositions of its former employees have not improperly impeded discovery.   Regardless of whether a formal attorney-client relationship exists, corporate counsel may object on privilege grounds to questions posed to former employees where the "communication relate[d] to the former employee's conduct and knowledge, or communication with defendant's counsel, during his or her employment."   *See Peralta*, 190 F.R.D. at 41. (noting also that questions about defense counsel's "legal conclusions or legal opinions" are protected under the work product doctrine); *Surles*, 2001 U.S. Dist. LEXIS 10048, at *18 (same).   For this reason, here, during the deposition of Jon Paul Lupo, a former City employee who has not sought Law Department representation, defense counsel was not precluded from objecting to Plaintiff's questions about what she had discussed with Mr. Lupo.   *See* Lupo

Dep., annexed to the Moscow Decl. as Exhibit "2" at 16:11-25 (asking Mr. Lupo to testify as to what defense counsel had told him about the case).

Furthermore, far from the "chicanery" that Plaintiff alleges motivated the representation of Mr. Eichenstein, Plaintiff's Mem. at 10, the Corporation Counsel has reasonably determined that the Law Department may effectively protect the interests of both the City and Mr. Eichenstein through formal representation, and Mr. Eichenstein has agreed to such representation. Formal representation ensures that an attorney for the City is present during any communication with the witness and will provide full and competent protection of the City's interests.[2]   And representation further ensures that former employees do not run afoul of the post-employment restrictions contained in Chapter 68 of the Charter, which apply to all former City employees. *See, e.g.*, Charter § 2604(d)(5) ("No public servant shall, after leaving city service, disclose or use for private advantage any confidential information gained from public service…").

Plaintiff's further claim that anything less than unfettered access to the City's former employees constitutes improper interference is incorrect. Plaintiff's Mem. at 16. The Law Department is simply invoking Rule 4.2 of the New York Rules of Professional Conduct, which prohibits lawyers from communicating or causing another to communicate about the subject matter of the representation with a party the lawyers knows to be represented by counsel. N.Y.R. Prof. Conduct 4.2(a) (22 NYCRR 1200.0). It has in no manner prohibited access to these individuals. [3]

---

[2] Attorneys for private corporations are entitled to represent former employees, and Plaintiff has offered no reason why municipal corporations should have less protection. For example, without a formal representation agreement, the Corporation Counsel would need to seek a protective order to ensure that Plaintiff does not discuss certain topics. Representation, by contrast, ensures a higher degree of protection for the City's corporate interests in its privileges and in competent representation for the former employee.

[3] Without any evidence to support her claim, Plaintiff alleges that the City directed John Linder, a former consultant for the NYPD, not to speak with her counsel. But Mr. Linder testified at his deposition that he did not to talk to Plaintiff's counsel, because (1) he generally does not return calls from attorneys he does not know, and (2) instead he called the Assistant Corporation Counsel

A proper reading of the very cases Plaintiff relies on supports the City's position. Plaintiff correctly cites *Judd v. Take-Two Interactive Software, Inc.*, 2008 U.S. Dist. LEXIS 26920, at *2-3 (S.D.N.Y. Apr. 3, 2008), for the general principle that "a party cannot prevent an adverse party from conducting *ex parte* interviews with former employees." Plaintiff's Mem. at 16. But Plaintiff elides the following language from that very same case: "Of course, if any former employee is represented by his own counsel, then Plaintiff's attorney cannot contact such former employee directly, and must communicate through counsel[,]" and, critically, the Court's further recognition that "[d]efendant may also offer to provide its former employees with counsel." *Id.* at *7-8. The City cannot prevent plaintiffs from interviewing current or former City employees. But where, as here, those individuals are represented by counsel--whether Corporation Counsel or a private attorney--plaintiff's counsel must communicate though their counsel.

Finally, the terms of the representation agreement between the Corporation Counsel and Mr. Eichenstein do not suggest anything unethical or untoward, as Plaintiff intimates. Plaintiff's Mem. at 14. Here again, Plaintiff's argument depends on her cherry-picking or omitting relevant information. For example, as Plaintiff correctly notes, the representation agreement requires that the represented party "cooperate in the defense of the matter." *Id.* at 8. But to distort this into an improper or unethical relationship, Plaintiff simply ignores the benign examples the agreement provides of what such cooperation entails—specifically, "ensuring that this Office has your current home address and telephone numbers, complying with our requests that you preserve and supply documents or other evidence in your possession, and making yourself available for

---

handling the case on recommendation of a "lawyer friend," who knew Plaintiff's counsel and suggested that Mr. Linder call the City, rather than Plaintiff's counsel. *See* Canfield Decl., Exhibit "E" at 31:15-19. Tellingly, Plaintiff chose not to include this testimony in her motion.

requested meetings, telephone conferences and depositions."  *See* Moscow Decl. at Exhibit "7."
Cooperation of this kind is required in all attorney-client relationships.

The agreement also does not pervert the attorney-client privilege, as Plaintiff
claims.  Plaintiff's Mem. at 8-9.  In this Circuit, "[i]n situations such as this where a former
employee is represented by counsel for a defendant corporation for the purpose of testifying at a
deposition at no cost to him, courts have not treated the former employee as having an independent
right to the privilege, even where that employee believes that he is being represented by that
counsel."  *Gary Friedrich Enters., LLC*, 2011 U.S. Dist. LEXIS 54154, at *11-12 (citations
omitted). The agreement simply explains this principle to ensure transparency.

In sum, Plaintiff's claim that she is entitled to unencumbered access to all current
and former City employees is undermined by the authority she cites.  Further, her strained attempt
to question or undermine the nature of the Law Department's relationship with these non-party
former employees is entirely baseless.

**POINT III**

**PLAINTIFF'S CLAIMS THAT DEFENDANTS
HAVE NOT COMPLIED WITH THEIR
DISCOVERY OBLIGATIONS IS
UNSUPPORTED BY THE RECORD**

Plaintiff's claims that Defendants have failed to produce evidence sufficient to
depose the two named defendants in this case, former Commissioner James O'Neill and former
First Deputy Commissioner Benjamin Tucker, despite that fact that discovery has been "pending
for more than two years," has no support in the record.  As an initial matter, discovery in this case
has not been pending for two years.  It did not begin in earnest until late 2020, due to the time
spent with mandatory settlement efforts, and then the shutdown due to the coronavirus.  *See*
Canfield Decl. at ¶¶ 3-14.

Next, in addition to paper discovery, which included personnel, policy, and other information, to date, Defendants have made at least three separate electronically-stored (ESI) document production, two of which were supplemented with additional collections. *See* Canfield Decl. at ¶¶ 25, 39, 40, 43..  These collections included the email boxes of both Commissioner James O'Neill and former First Deputy Commissioner Benjamin Tucker, as well as other high-level individuals in senior leadership positions during the relevant time period.  Defendants have also produced the handwritten notes of Raymond Spinella, Commissioner O'Neill's former Chief of Staff.  Plaintiff has twice deposed him regarding those notes, and that testimony, in part, revealed that those notes memorialized his conversations with Commissioner O'Neil, among others.  Canfield Decl. at ¶¶ 29, 32-34, 41-42.

But while Plaintiff claims she needs more information, she has failed to identify exactly what she seeks—both in this motion, and in discussions with Defendants.  For instance, in her motion, Plaintiff claims that the City has "not produced certain documentary evidence known to exist crucial to the prosecution of this case," but she has failed to identify with any specificity what information she seeks.  Plaintiff's Mem. at 1.  This is consistent with Plaintiff's repeated failure to meet and confer with Defendants, concerning documents Plaintiff believes to remain outstanding.  In her motion, Plaintiff claims that she does not have the documents to move forward with the depositions of Commissioner O'Neill and First Deputy Commissioner Tucker, among others.  Moscow Decl. at ¶3.  Yet, when asked to meet and confer in August 2020 regarding the collection of the individual defendants email boxes, Plaintiff failed to participate or engage in any meaningful negotiation regarding the collection.  Canfield Decl. at ¶¶ 16-17.

Similarly, Plaintiff has focused on the political messaging surrounding the senior leadership appointments, honing in on the Mayor's alleged role in the employment decisions by the NYPD at issue, and seeks documents related to that messaging.  But when asked to meet and

confer regarding an ESI collection involving the Mayor and his senior leadership, Plaintiff was non-responsive, stating that she did not know what other custodians or search terms the collection should include, claiming, in sum and substance, that she does not know what is out there.  Canfield Decl. at ¶¶ 68-69.  This perhaps explains Plaintiff's demand for all emails sent by Mr. Eichenstein for the 72-hour period preceding the date on which Eichenstein sent the email that was the focus of his deposition, rather than work cooperatively with Defendants to craft a narrow search and production consistent with FRCP 26(b).

Regardless, as acknowledged by Plaintiff, Defendants have searched Mr. Eichenstein's emails and have produced the source of such phrases as 'color is critical.'" Defendants have also produced approximately 100 additional emails from Mr. Eichenstein's account that pertain to the political messaging surrounding the senior leadership appointments. *See* Exhibit "J" annexed to the Canfield Decl.  Thus, any issue regarding the productions of Mr. Eichenstein's emails should be considered moot.

To conclude, it appears, based on the course of discovery in this case, that rather than cooperatively work with defendants to develop a reasonable discovery plan, which includes the duty to meet and confer as to the scope of document discovery and the production of witnesses, Plaintiff has instead run to the Court, hoping that the Court will excuse his failure to act consistent with the FRCP and in good faith.  The Court should not reward such conduct and Plaintiff's motion should be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion, and grant Defendant costs and disbursements, together with such further relief as the Court deems just and proper.

Dated:   New York, New York
         September 13, 2021

GEORGIA M. PESTANA
Corporation Counsel of the
 City of New York
Attorney for Defendants
100 Church Street, Room 2-124
New York, N.Y. 10007
(212) 356-2461

By: ECF          /s/
                 Donna A. Canfield
              Assistant Corporation Counsel