

John W. Moscow
212 822 0164
john.moscow@lbkmlaw.com

July 29, 2022

**VIA ECF**

The Honorable Loretta A. Preska
U.S. District Court, Southern District of New York
United States Courthouse
500 Pearl Street, Room 2220
New York, NY 10007

> The parties shall appear for a telephonic conference on Tuesday August 2 at 11:00 a.m. using the following information: Dial in (877) 402-9753; Access code 6545179.
>
> SO ORDERED. *Loretta A. Preska*
> 7/29/2022

Re: *Jaffe v. City of New York, et al.*, No. 19-cv-7024 (LAP)
Pl.'s Reply to July 27, 2022 Letter from Donna A. Canfield (ECF No. 113)

Dear Judge Preska:

Plaintiff asked for a conference. Defendants' response is that there need be no conference because, on the facts as they see them and as a matter of law, the Court should not grant relief. They write that the party seeking discovery must show that this is not a fishing expedition, and that the discovery sought is proportional in the case. Their position is that asking a party to a civil action—an alleged central figure, no less—to search his emails and text messages is "disproportionate."

Plaintiff disagrees.

A lawsuit against the Mayor and the Police Commissioner of the City of New York for their intentional violations of federal, state, and City anti-discrimination laws, based substantially on the emails that were produced, is a substantial matter; the case background discloses that four senior white police officers were fired so that the Mayor could have a press conference announcing that what he did was good for people of color. In internal communications pried out of the City to date, Mr. de Blasio revealingly referred to his hand-picked replacement for Plaintiff, Nilda Hofmann, by her maiden name "Irizarry" to highlight her ethnicity; he and his wife proceeded to interview her to be a three-star chief in the NYPD. De Blasio apparently got her name from a spreadsheet from the Police Department that sorted senior-level NYPD officers by race/ethnicity, gender, seniority, and age.[1] Accordingly, Defendants' proportionality argument is out of place. The behavior engaged in here would normally constitute a major scandal.

Defendants' opposition wholly fails to address Plaintiff's request that Defendants disclose the search terms that Mr. de Blasio used to reach his conclusion that he had no responsive documents, a position that they could not maintain at a conference. Defendants'

---

[1] The referenced spreadsheet was produced by the City as NYC_0001766. Plaintiff does not attach a copy here because the City stamped it "Confidential," as it has done for essentially every document it produced in this case—a tactic that makes it difficult to file evidence with the Court.

The Chrysler Building | 405 Lexington Avenue, 64th Floor | New York, NY 10174 | t 212 826 7001 | f 212 826 7146

NEW YORK    WASHINGTON    LONDON

lbkmlaw.com



Hon. Loretta A. Preska
July 29, 2022
Page 2

written opposition glosses over the issue of search terms entirely, stating only that "Mr. de Blasio represented to counsel that he did not use his personal email account or personal devices…" Defendants' Letter Response ("Opp."), ECF No. 113, at 2. Counsel has already represented that search terms were applied but presents no basis in law or fact for refusing to disclose them. Plaintiff's motion cited good law as to why they should.

The dispute as to the City's right to keep secret the search terms that have already been applied is, in itself, a reason why a conference on this issue is necessary. Counsel for the City, however, accuses Plaintiff of misleading the Court by falsely claiming to possess documents showing that City employees were instructed to use their cell phones to send text messages relevant to plaintiff's claims. The City asserts that Plaintiff failed to provide such documents to the Court "because she cannot." Opp. at 2.

Plaintiff can and, by this response does, provide those documents. *See* Exhibit 1 hereto (the "Validator Spreadsheet"), which is a printout of a "Google Sheets" online spreadsheet workbook[2]—created and collaboratively edited by City Hall officials—which reflects that mayoral staffers were assigned to send text messages to "validators" with the talking points that the Mayor wanted the validators to know about the Mayor's discriminatory NYPD hires.[3] Some of the validators who were meant to receive these text messages were also elected City officials. Defendants have not produced or, to the best of Plaintiff's knowledge, even searched for these text messages.

It is important to note that Exhibit 1 has *not* been produced by the City in discovery to date. Rather, an email produced by the City happened to contain a stray website link in its body, and when Plaintiff's counsel decided to copy and paste that link into a web browser to see what it was, it turned out to navigate to the Validator Spreadsheet workbook on the Google Sheets website. This document is hosted on a Google server, *not* on the City's server. It is highly relevant to this action, yet Defendants *would never have knowingly produced it.* Instead, the City seeks to restrict their searches to City servers, despite knowing that relevant documents are stored elsewhere.

Additionally, the Google Sheets online platform tracks users who access or edit a document by name and the month of their edits. The edit history for the Validator Spreadsheet is attached hereto as Exhibit 2. It reveals a long list of users who accessed or edited the Validator Spreadsheet in January 2018—the month of Plaintiff's unlawful termination and replacement

---

[2] Google Sheets is an online spreadsheet editing application similar to Microsoft Excel, but documents are filed in the spreadsheet creator's online Google account, and the creator can give access to anyone, to view or to collaboratively edit. It is *not* part of the City's systems.

[3] Defendants' accusation is all the more perplexing because Plaintiff has not kept her possession of Exhibit 1 a secret. She directly identified and even quoted from it in various discovery materials served upon the City, including her Second Amended Initial Disclosures and written document requests and interrogatories directed to the City.



with Hofmann—including Simcha Eichenstein (currently a New York Assemblyman, at the time a member of the Mayor's legislative affairs team and senior intergovernmental staff at City Hall), Ariana Caplan (a senior member of the Mayor's legislative team), Sherif Soliman (a Senior Advisor to the First Deputy Mayor), Chatodd Floyd (at one time the Mayor's Deputy Chief of Staff), and numerous "anonymous users," who could have been *anyone*. Upon information and belief, for a user's name to be recorded in the edit history (as opposed to being identified as an "anonymous user"), he or she would have had to be logged into their Google/Gmail account while accessing the spreadsheet. Hence, it is not mere speculation to assert that members of City Hall conducted business relevant to this action outside of their official email accounts and outside of City servers, both on their Google/Gmail accounts and on their personal cell phones. Exhibits 1 and 2 prove it.

Given Defendants' track record in this litigation and the documented evidence of relevant documents and communications stored outside of City servers and devices, it is inappropriate for Defendants to argue that Plaintiff is bound to uncritically accept Defendant de Blasio's representations. We can address that at a conference, but it is unproductive to suggest that Defendants have been fully honest or forthcoming in their disclosures. It would probably be more efficient to have a conference to resolve the few issues raised at this time. We respectfully thank you for your attention to this matter.

Respectfully submitted,

  /s/  John W. Moscow
John W. Moscow
A. Mackenna White
LEWIS BAACH KAUFMANN MIDDLEMISS PLLC


  /s/  Lou LaPietra
Lou LaPietra
LAPIETRA & KRIEGER, P.C.


cc:     Counsel of Record (via ECF)

Encl.