

John W. Moscow
212 822 0164
john.moscow@lbkmlaw.com

August 16, 2023

**Via ECF**
Hon. Loretta A. Preska
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Jaffe v. City of New York, et al.*, No. 2019-cv-07024

Dear Judge Preska:

I write with two related requests on behalf of Plaintiff Joanne Jaffe. Counsel have conferred but been unable to reach agreement regarding setting a new discovery schedule, and the discussions have left Plaintiff unconvinced that merely filing yet another request for a case management order with enlarged discovery deadlines will suffice to bring discovery on track.[1] Even so, we need a new Case Management Plan (CMP). To make the CMP effective, and pursuant to Local Civil Rule 37.2, Plaintiff requests a pre-motion discovery conference in anticipation of filing a motion to compel discovery as to all Defendants.[2]

For now, Plaintiff submits the limited proposed CMP attached hereto, while further seeking leave to move for an order compelling the City, under penalty of sanctions, to fulfill its discovery obligations by a date certain. Until Plaintiff has the documents, it is useless to set additional dates in the CMP. Defendants' discovery deficiencies are manifold, and their lack of diligence in correcting these deficiencies has continually delayed the completion of discovery. Plaintiff's motion to compel would address the following:

**a. Defendants have not served responses to five of Plaintiff's discovery requests, in violation of Fed. R. Civ. P. 33(b) and 34(b)(2).**

Defendants have not served any written objections or responses to the following discovery requests served by Plaintiff:

1. Plaintiff's First Set of Interrogatories, dated 2/26/20, containing 18 individual interrogatories (attached hereto as Exhibit 1).
2. Plaintiff's Second Demand for Production of Documents, dated 3/9/21, containing 15 individual requests (attached hereto as Exhibit 2).
3. Plaintiff's Third Request for Production of Documents from Defendant City of New York, dated 6/20/22, containing 11 individual requests (attached hereto as Exhibit 3).

---

[1] The City has suggested a new deadline for production of 10/1/23 with the caveat that it cannot promise production of the categories of documents Plaintiff has sought for several years—a vague and unenforceable promise akin to "we'll have the documents to you next month, maybe." Moreover, the City insists on a preemptive limit to the number of additional depositions that can be taken, even though Plaintiff cannot ascertain what depositions will need to be taken, given the current posture of discovery.

[2] Defendants' counsel have previously requested and received leeway in getting up to speed on this case, which they took over from departed Assistant Corporation Counsel Donna Canfield. ACC Canfield's last day with the NYC Law Department was September 28, 2022. Needing time to "get up to speed" is no longer a valid excuse.

4. Plaintiff's Third Request for Production of Documents from Defendant James O'Neill, dated June 20, 2022, containing 12 individual requests (attached hereto as Exhibit 4).
5. Plaintiff's Fourth Request for Production of Documents from Defendant City of New York, dated March 17, 2023, containing six individual requests (attached hereto as Exhibit 5).

On June 7, 2023, we re-sent copies of all of Plaintiff's past document requests to the City's counsel. *See* Exhibit 6. On July 28, 2023, I sent the City's counsel a 20-page summary listing every written discovery request that Plaintiff has served on Defendants and what response, if any, Defendants had made. I stated that the City had served no responses to multiple requests and asked the City's counsel to correct me if I was mistaken. *See* Exhibit 7 (July 28 email and attachment). More than two weeks later, the City has yet to explain its inaction or commit to providing its long overdue discovery responses.

**b. Defendants' production of documents does not comply with the procedures set forth in Fed. R. Civ. P. 34(b).**

During a discovery conference on June 7, 2023, the City's counsel represented that he "told plaintiff's counsel" of his "understanding that everything requested [from the de Blasio administration] was produced to the extent it exists." Your Honor admonished the City's counsel that this was insufficient and that the City needed to state this in a "Rule 34 response." Exhibit 8 (6/7/23 Transcript) at pp. 7:12-8:17. Since that conference, the City has served no amended or supplemental discovery responses and, broadly speaking, has done nothing to bring its discovery conduct in line with Rule 34. Not only has the City failed to provide written responses to several of Plaintiff's discovery requests as required by Rule 34(b)(2)(A) and (B), but the City in its chaotic production has also breached Rule 34(b)(2)(E)'s requirement that it either produce documents as kept in the course of business or organize and label them to correspond to the categories in Plaintiff's discovery requests. Plaintiff has no way of knowing which documents the City deems responsive to Plaintiff's various document requests (the majority of which have not even been responded to in writing) and which are filler, bulking up the City's sparse production with irrelevant and unrequested documents.

**c. Defendants' production of documents appears to be incomplete, and their representations about what evidence may exist have proven to be unreliable.**

To date, in terms of ESI, the City has produced 1,289 documents that appear to have been collected from email systems. We examined the metadata in these documents to identify their custodial sources. As best we could tell,[3] approximately 24 documents were collected from Bill de Blasio's City Hall email account, 26 from "First Lady of NYC" Chirlane McCray's City Hall email account, four from McCray's personal email account, 94 from James O'Neill's NYPD email accounts, and 30 from O'Neill's personal email account. As might be expected from such meager numbers, Defendants' production leaves major gaps in the record.[4]

---

[3] The City's production of metadata has been inconsistent across its rolling production volumes. In some instances, a "Custodian" field was provided, and in others we had to examine a metadata field indicating the name of the email folder a document was collected from. The City produced some of its ESI without metadata altogether.

[4] For example, there is a roughly three-week gap in the record between the November email wherein James O'Neill received a list with the name of Chief Jaffe's prospective replacement Nilda Hofmann, and a December email indicating that de Blasio met with Hofmann earlier that day regarding her potential promotion. If there is a paper

Hon. Loretta A. Preska<br>
August 16, 2023<br>
Page 3

Unfortunately, Plaintiff cannot take Defendants on their word that they have produced everything there is to produce when their representations in discovery have repeatedly proven to be unreliable. For example, Interrogatory No. 3 from Plaintiff's First Set of Interrogatories directed to Bill de Blasio asked de Blasio to "Identify all persons with knowledge of Nilda Irizarry Hofmann's selection for promotion to Chief of Community Affairs." The sole individual named in de Blasio's answer was James O'Neill, yet Hofmann testified at her deposition that the Mayor's wife Chirlane McCray also attended Hofmann's interview with the mayor. Interrogatory No. 4 asked de Blasio to identify all persons with knowledge of the drafting or editing of the 1/8/2018 press release regarding Hofmann's promotion, and he again identified only O'Neill, despite the existence of emails showing McCray, political advisor Emma Wolfe, Jonathan Linder, and a slew of other advisors circulating their revisions and comments on the draft press release.

De Blasio plainly did not exercise diligence or care in answering Plaintiff's interrogatories. Accordingly, we cannot accept his bald assertions that he possesses no responsive documents, as he stated in answer to each of Plaintiff's document requests directed to him, nor can we simply accept the City's bald assertion that it has produced everything responsive that exists. In her motion to compel, Plaintiff will propose that Defendants be ordered, under threat of sanction: (i) to review and correct any inaccuracies in their past discovery responses and to certify their accuracy; (ii) to disclose which potentially responsive custodial records were preserved and which were not preserved; (iii) to disclose what custodial sources the City collected documents from in response to Plaintiff's document requests,[5] and (iv) to disclose what methods were used for the collection and review of documents to be produced in discovery, and on what basis non-privileged records were withheld.

Until the City answers each of Plaintiff's discovery requests, identifies which of the documents it has produced are responsive to which requests, and provides responses that are accurate and transparent, discovery will remain incomplete. Accordingly, we respectfully request that this Honorable Court enter the proposed CMP and further set a pre-motion conference to discuss the City's aforementioned discovery deficiencies or otherwise authorize Plaintiff to file a motion to compel discovery.

Respectfully,<br><br>
*/s/ John W. Moscow*<br>
John W. Moscow

cc: Counsel of Record (via ECF)

---

trail showing how Hofmann was selected and how this meeting came about, it should be produced. If there is no paper trail, then that is significant in its own right and should be admitted by the Defendants in a Rule 34 response.

[5] Largely through luck, we discovered that the Mayor's Office used a "Google Sheet" spreadsheet, hosted by Google in the cloud, to plan its strategy for publicizing the promotions of Hofmann and other people of color. The City never produced this key document; we only found it because the web address for the spreadsheet happened to be written in the body of an email the City did produce. There is no indication that the City ever undertook a search for such records or spoke to its personnel about where they may have stored ESI outside of City email servers.